## Nashville, Chattanooga & St. Louis Railway Company v. Downing's Admr.

(Decided October 10, 1912.)

## Appeal from Marshall Circuit Court.

Railroads—Trespasser on Track—Where No Recovery Can Be Had For Death of.—Those operating a railroad train have the right to presume that a trespasser seen walking on the track will get off, and are required to take no steps to check or stop the train until his conduct is such as to show he is unconscious of the train's approach, and will not get off the track; and where a trespasser on becoming aware of the train's approach runs down the track instead of stepping off and because of this is killed, it being too late to stop the train, no recovery can be had.

WHEELER & HUGHES for appellant.

J. S. PRICE, SHEMWELL & REEDER and BERRY & GRASS-HAM for appellee.

Opinion of the Court by Chief Justice Hobson—
Reversing.

Thomas Downing, while walking on the railroad
track, was struck and killed by a passenger train of the
Nashville, Chattanooga & St. Louis Railway Company,
in Marshall County and this action was brought to re-
cover for his death on the ground that it was due to the
negligence of the company. The place where he was
killed was out in the country and he was a trespasser
upon the track. It is conceded that those operating the
train owed him no duty until his peril was discovered
and the only question in the case is whether there was
sufficient evidence to take the case to the jury, it being
conceded that there can be no recovery unless those in
charge of the train, after discovering his peril, failed to
use proper care to avoid injury to him. The circuit court
refused to instruct the jury peremptorily to find for the
defendant and the jury returned a verdict in favor of
the plaintiff, for two thousand ($2,000) dollars. The
court entered judgment on the verdict and the defendant
appeals.

The proof on the trial was, in substance, as follows:

J. M. Johnson—Thomas Downing was about forty-
five years old at his death. He couldn't hear anything.

Cap. Smuthers—I was up in the field helping a man
unload a wagon. I saw the man in front of the train and
saw him disappear. The stock whistle attracted my at-
tention. I could see the whistling post. I first heard the
train whistle for the crossing, before it got to the whist-
ling post. It whistled once and ran a little piece and
whistled again. It was right at him when it whistled the
second time. It made a sort of check just before it hit
him and stopped about at the crossing. Cross-examined.
—I didn't pay any attention to the train until it com-
menced whistling. I then saw the man in front of the
train and it continued to blow until it got right at him.
It was a quarter of a mile from him when it first whis-
tled.

Claude Wade—I first heard the train whistle for the
crossing and then heard a whistle like there was stock on
the track. It first whistled four times for the crossing
and when it went on further it whistled a time or two like
there was stock on the track. It ran about a quarter of
a mile, I guess, after it whistled, commenced whistling

like there was stock on the track. It stopped three or four hundred yards beyond where the man was hit. I don't think it whistled the stock whistle more than three times. Cross-examined—I first saw the train just a little below where it struck the man. The train was running at its usual speed.

Newton Pace—I was standing in a wagon unloading the wagon. I heard the train whistle twice, short blasts of the whistle. Cross-examination—I saw Mr. Downing on the track in front of the train. When I saw him he was running. He ran four or five steps or six steps down the track.

Tom Smuthers—I heard the train whistle and then it commenced whistling again like there was something on the track and I knew it was a signal for something in the way. When it got to whistling like it was going to run over something I got up and went to the door and looked out. I was sitting there by the fire. When I got to the door it had knocked him off. I got up as quick as I could and went to the door.

Ruben Ross—The alarm whistle attracted my attention. I went down there after the accident. The train stopped right at the crossing.

Wm. Gibson—I heard the train whistle for the crossing. It was then in the woods back of the whistling post. It whistled for the crossing and then whistled fast like there was something on the track. These whistles were as quick as could be whistled.

Ernest Pace—I was about four hundred yards off when I saw the train. I looked then in front of it and saw Mr. Downing going along the track. I then flashed my eyes to the crossing and saw there was nothing there then I threw my eyes back to the train and Mr. Downing and by that time it was about twenty or thirty feet away and he was just running then. It looked like to me he ran four or five steps down the track in front of the train and disappeared. I didn't see it hit him. The fast whistles first atracted my attention. The whistling post is eighty rods from the crossing.

Mr. Morgan—I counted the rails. It was twenty rails from where his body was found to the crossing. From the place where his body was found to the whistling post is fourteen rails. From the whistling post back to the woods is twelve or thirteen rails. A rail is thirty feet long. The track is straight for a half a mile.

This is the sum of the evidence,

We have held in a number of cases that the engineer, when he sees a man walking on the track, has the right to presume that he will get out of the way and that he is not required to check the speed of the train or to take precautions for his safety until, as a reasonable man, he should conclude that the trespasser is not aware of the approach of the train and will not get out of the way. It is evident from all the testimony that the train was running about forty miles an hour and that a very short time elapsed between the first alarm whistle and the striking of the man. When the engineer blew the crossing whistle and the man continued on the track he was some distance from the man and had a right to presume that the man would get off the track. When the man did not leave the track he blew the alarm whistle. The man could have easily stepped from the track at this time, as the ground was level; but instead of doing so he appears to have lost his presence of mind and to have run down the track instead of stepping to one side. The engineer did not know that he was deaf and had a right to presume that he was heeding his signals. He had a right to presume that when he became aware of the approach of the train he would get off the track. The death of the man was due to his running down the track when he became aware of the approach of the train. The engineer was sworn on the trial and testified to what occurred, practically as the other witness. Railroad trains are not required to stop whenever trespassers are seen on the track. Those operating them have a right to presume that the trespassers will get off when they become aware of the approach of the train and it is evident here from all the testimony that this man lost his life by running down the track when he should have gotten off it. We, therefore, conclude that the court should have instructed the jury peremptorily to find for the defendant.

Judgment reversed and cause remanded for proceedings consistent herewith.